IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RICHARD LEE GREEN,<br><br>                          Plaintiff,<br><br>      v.<br><br>DINH HOANG PHUONG,<br><br>                         Defendant. | Case No. 3:20-mc-00011-TMB<br><br>ORDER ON MOTION FOR EXPEDITED CONSIDERATION [DKT. 3] AND MOTION FOR CONFIRMATION [DKT. 4] |

## I. INTRODUCTION

The matter comes before the Court on an "Emergancy [*sic*] Motion for Expidited [*sic*] Consideration to the Request for Confirmation of Indonesian Foreign Arbitrational Award" ("Motion for Expedited Consideration") and a "Request for Expidited [*sic*] Confirmation of Indonesian Foreign Arbitrational Award" ("Motion for Confirmation").[1] Defendant Dinh Hoang Phuong, through her counsel, Alaska Legal Services Corporation ("ALSC"), filed an Opposition with supporting exhibits.[2] Plaintiff Richard Lee Green then filed a Reply.[3] The Court held hearings on the Motions on June 19, 2020, July 1, 2020, and July 8, 2020.[4] The Motions are now ripe for

---

[1] Dkts. 3 (Motion); 4 (Motion). Although both Motions purport to be filed by the arbitrator "by and through his proxy Wayne Anthony Ross P.C.," Attorney Ross clarified that he represents Plaintiff Richard Lee Green, who is the actual party in interest seeking to confirm and enforce the arbitration award in this Court.

[2] Dkts. 11 (Opposition); 12 (Opposition). Dockets 11 and 12 share an identical Opposition but attach different exhibits. The Court will consider all the exhibits in both dockets as support for Defendant's Opposition but cite only to Docket 11 when referring to the pleading itself.

[3] Dkt. 16 (Reply).

[4] Dkts. 8 (Minute Entry); 19 (Minute Entry); 33 (Minute Entry).

1

resolution. For the reasons discussed below, the Motion for Confirmation is **DENIED** and any other pending motions, including the Motion for Expedited Consideration, are **DENIED as moot**.

## II. BACKGROUND

Simply stated, this case arises from a contract the parties purportedly entered on August 28, 2014 (the "Contract").[5] However, the procedural posture and the record before this Court are rather convoluted. The tortuous record involves multiple parallel proceedings, including an ongoing divorce and child custody action in Alaska state court and an alleged Indonesian arbitration proceeding. The record also raises many questions and troubling allegations of potentially criminal conduct, perjury, and violations of the Alaska Rules of Professional Conduct.

### A. The Purported Contract

The Contract, as submitted by Plaintiff, consists of three pages.[6] Page 1 is titled, "Pre-Marital Agreement of Richard Lee Green and Dinh Hoang Phuong" and states that the parties voluntarily enter into the "Marriage Contract in hopes of growing a real relationship, establishing a family and working together for the benefit of each other and of any offspring that may or may not come out of this union."[7] The terms on this page broadly outline the assets and property each party brings into the marriage and set forth the division of assets, property, and obligations in the event either party chooses to leave the relationship.[8] The terms also purport to govern the custody

---

[5] Dkt. 1-2 (Contract).

[6] *Id.* Defendant contends that she was only given the third page of the Contract to review and sign and it was her understanding that the "contract" between the parties consisted of just that one-page document. Dkt. 12-1 at 4 (State Court Pleading). The Court makes no findings as to what pages of the Contract were present at the time of signing and whether the Contract is enforceable.

[7] *Id.* at 1.

[8] *Id.*

and visitation rights for any children born from the relationship.[9] The last paragraph of Page 1 states, "This agreement shall be binding in Indonesia, Vietnam, and The United States of America and any other country or state that Richard Lee Green may reside in."[10]

Page 2 appears to be a photocopy of Defendant's passport issued by the Socialist Republic of Vietnam.[11] Page 3 is titled, "Traditional Wedding vows and Commitment/Contract."[12] This page appears to be a script of the parties' exchange of vows and rings.[13] The last paragraph appears to be an arbitration clause that subjects the Contract to "the Laws of God and the Holy Ordinance as found in the Holy Bible and general interpretations of the Presbyterian Faith" and specifically requires arbitration "to/by Jeffrey H. Klett and/or his successors and assignees."[14] It further states, "Both parties agree that any decision(s) by the arbitrator are absolutely binding and that a court of competent jurisdiction shall uphold any decision rendered by the arbitrator."[15]

### B. *Plaintiff's Motions Filed in this Court*

On June 5, 2020, Attorney Ross, appearing as a "duly appointed proxy" for Reverend Timothy L. Sizemore, filed a "Notice of Filing a Foreign Arbitration Award 9 U.S.C. Chapter 2 — Convention on the Recognition and Enforcement of Foreign Arbitral Awards" and a

---

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2.

[12] *Id.* at 3.

[13] *Id.*

[14] *Id.* At the time, Mr. Klett was the President of the Soldiers of the Cross, a religious organization out of Alaska that sends missionaries, such as Plaintiff, abroad.

[15] *Id.*

3

"Memorandum in Support of Confirmation of Indonesian Foreign Arbitrational Award" (together, the "Notice").[16] The Notice refers to the arbitration clause in the Contract and claims that a demand for arbitration was made in writing on March 26, 2020.[17] Reverend Sizemore accepted the appointment on March 28, 2020.[18] Reverend Sizemore purportedly issued a partial final award for jurisdiction and enforceability ("Partial Award") on April 24, 2020, and issued a final award of all issues ("Final Award") on May 18, 2020.[19] The Notice seeks to confirm both the Partial Award and Final Award in this Court "for registration, confirmation and enforcement both here and abroad."[20] The Notice was not filed with a certificate of service, indicating that it was filed *ex parte*.

On June 17, 2020, Plaintiff concurrently filed the Motion for Expedited Consideration and Motion for Confirmation.[21] The Motion for Expedited Consideration seeks expedited confirmation of the Partial Award and Final Award "because the arbitrator has other time sensitive deadlines for filing in this multi-national award in other countries which will expire soon. The arbitrator

---

[16] Dkts. 1 (Notice); 2 (Memorandum).

[17] Dkt. 2 at 2.

[18] *Id*. The Notice claims that on March 17, 2020, Dewa Gede Dalem, President of Soldiers of the Cross and successor to Jeffery H. Klett was initially appointed the arbitrator but due to geographic and language barriers, he asked Reverend Sizemore to act as the arbitrator. *Id.*; Dkt. 1-1 at 2 (Letter).

[19] Dkts. 1 at 2; 1-3 (Partial Award); 1-4 (Final Award). The Partial Award and Final Award suffer from the same defect: it appears Reverend Sizemore signed both Awards on May 19, 2020, but the notary signed and dated the documents on May 29, 2020. Dkts. 1-3 at 21–22; 1-4 at 17–18.

[20] Dkt. 2 at 4.

[21] Dkts. 3; 4.

4

must file the confirmed award in the Indonesian court by June 18, 2020."[22] The Motion for Expedited Consideration attaches an email from Reverend Sizemore expressing concern that the property issues at-hand span "three sperate [*sic*] countries and the value of the cargo in holding is very expensive and may be lost if it just sits."[23] The Motion for Confirmation requests this Court confirm the Partial Award and Final Award under 9 U.S.C. § 207.[24] Without evidence or argument, Plaintiff asserts that the two Awards fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") and requests relief as soon as possible.[25] Neither Motion was filed with a certificate of service, again, indicating they were filed *ex parte*.

The underlying Final Award proffers "Findings of Fact," "Conclusions of Law," and award terms "[i]n the best interest of the children" based solely on information supplied by Plaintiff.[26] The Final Award includes allegations of domestic violence, child abuse, kidnapping, and fraud, all purportedly committed by Defendant.[27] The terms of the Final Award are separated into the following categories: A. Property Division; B. Debt Responsibilities; C. Legal Custody; D. Religious Upbringing; E. Physical Custody; F. Visitation; G. Vacations; H. Holidays; and

---

[22] Dkt. 3 at 1.

[23] Dkt. 3-1 (Email).

[24] Dkt. 4 at 2.

[25] *Id. See* 9 U.S.C. § 201 et seq.

[26] Dkt.1-4 at 4–16. Reverend Sizemore testified that Plaintiff provided approximately 500 pages of evidence and legal authority for his review. In addition, Reverend Sizemore testified that because Defendant and ALSC did not submit any evidence, briefing, or proposed award terms and failed to appear at the arbitration hearings, the Final Award essentially issued by default based largely on Plaintiff's proposed award terms.

[27] *Id.* at 5–6.

I. Birthdays.[28] The Final Award further assigns to Defendant financial responsibilities for the following expenses: Child Nurturing and/or Child Support; Educational Support; Cost of Living Adjustment/Maintenance; Medical and Dental Insurance; Attorney's Fees; and Arbitration Fees.[29] Of the 31 total pages, matters concerning child custody predominate the terms of the Final Award.

### C. Initial Status Hearing

After a preliminary review of the Motions and Awards, the Court set a virtual Status Hearing for June 19, 2020.[30] The Court noted that it was unclear whether Defendant was aware of Plaintiff's filings in this case or whether she has current legal representation.[31] Therefore, the Court ordered Plaintiff serve all materials in this case on Defendant and requested ALSC attend the hearing and report on the status of their representation.[32]

Several issues were raised at the virtual Status Hearing on June 19, 2020.[33] Plaintiff argued for expedited consideration of the Motion for Confirmation because, according to Plaintiff, there was "cargo" being held in Indonesia and the Indonesian government would not release the "cargo" without a court order confirming the arbitration award.[34] ASLC confirmed that they represent

---

[28] *Id.* at 7–12.

[29] *Id.* at 12–15.

[30] Dkt. 5 (Text Order).

[31] *Id.*

[32] *Id.* Plaintiff subsequently filed a Certificate of Service at Docket 7 that does not comport with the Court's Order. The Certificate of Service was signed and dated by Attorney Ross on May 15, 2020, and does not attest to service of the filings in this case, including the two pending Motions. Dkt. 7 at 3.

[33] Dkt. 8 (Minute Entry).

[34] The record before the Court does not explain what the cargo contains or its relevance to this case. At the hearing, Plaintiff did not identify the nature of the cargo but argued for expedited consideration because the cargo was "spoiling." Neither the Partial Award nor Final Award

Defendant and informed the Court that the parties are actively litigating their divorce and child custody dispute in the Superior Court for the State of Alaska, Third Judicial District at Palmer.[35] In addition, Defendant had not had an opportunity to respond to the pending Motions in this case. Therefore, the Court set an in-person Motion Hearing on July 1, 2020, permitted Defendant additional time to file a response to the Motions, and ordered both parties provide the Court with all the relevant filings from the state court proceedings.[36] The Court also ordered Reverend Sizemore telephonically appear at the Motions Hearing.[37]

### D. Defendant's Opposition and Plaintiff's Reply

On June 26, 2020, Defendant filed her Opposition to the Motion for Expedited Consideration and Motion for Confirmation.[38] Defendant argues that the *Rooker-Feldman* doctrine bars Plaintiff from litigating the present issues in Federal Court because "[t]he Alaska Superior Court has already rejected plaintiff's efforts at forcing this matter into arbitration."[39] In support, Defendant attaches two Orders issued by the state court: (1) "Order Denying Defendant's Motion to Order Arbitration and Motion to Stay Proceedings," dated May 19, 2020; and (2) "Order

---

identify or allocate any pending cargo to the parties. The cargo's sender, intended recipient, and purpose are unknown.

[35] *Id.* The state court case is captioned *Phuong Dinh Green v. Richard L Green*, No. 3PA-19-01073 CI.

[36] Dkt. 10 (Order).

[37] *Id.*

[38] Dkt. 11.

[39] *Id.* at 1. Plaintiff's case initiating filings and subsequent motions do not reference the pending Alaska state court litigation. Defendant asserts that this failure to disclose violates Alaska Rule of Professional Conduct 3.3, regarding Candor Toward the Tribunal, and recommends referral of this matter to Bar Counsel under Alaska Rule of Professional Conduct 8.3(a). *Id.* at 1, n.1.

7

Denying Motions for Reconsideration Re: Arbitration," dated June 22, 2020.[40] The first Order summarily denies Plaintiff's attempt to compel arbitration.[41] The second Order sets forth the background of the state proceedings and discusses the reasons to deny both Plaintiff's motion to order arbitration and motion for reconsideration.[42] The state court found that Plaintiff had waived his alleged right to arbitrate and, in light of the extensive motions practice already litigated in state court, ordering arbitration at that point in the case would be prejudicial to Defendant.[43]

Plaintiff filed a Reply on June 28, 2020.[44] Plaintiff argues that he "is seeking to confirm a foreign arbitration award and [he] has never submitted that matter to any state court for confirmation."[45] Therefore, Plaintiff concludes the *Rooker-Feldman* doctrine does not apply.[46] Plaintiff further argues that the Court must confirm the award because Defendant has failed to show that grounds for refusing to recognize or enforce the award exist.[47]

---

[40] Dkts. 11-2 at 31 (State Court Order); 11-1 (State Court Order). In the state court litigation, the parties are named Phuong Dinh Green as the plaintiff and Richard Lee Green as the defendant. To avoid confusion, the Court refers to the parties by their respective posture in this case even when discussing the state proceedings.

[41] Dkt. 11-2 at 31.

[42] Dkt. 11-1.

[43] *Id.* at 4–6. However, the state court expressed that it made no finding as to the validity of the underlying Contract.

[44] Dkt. 16 (Reply).

[45] *Id.* at 4.

[46] *Id.*

[47] *Id.* at 6–8.

### E. Motions Hearing

The Court held the in-person Motions Hearing on July 1, 2020.[48] Reverend Sizemore appeared by video conference and testified as to his involvement in the underlying arbitration, including his background, his prior acquaintance with the parties, how he became the arbitrator, how he conducted the arbitration, and how he rendered the Partial Award and Final Award. After Reverend Sizemore's testimony, the Court granted Plaintiff's oral motion to continue the hearing.[49] The Court instructed the parties to notify the Court of any additional witnesses to be called and to file any additional relevant documents for the Court's review.[50]

The Motions Hearing was continued to July 8, 2020.[51] That morning, prior to the continued Motions Hearing, the Court received two unsolicited emails from Reverend Sizemore; both parties were copied on the emails.[52] The first email attached a Microsoft Word document entitled, "Letter to judge regarding corrected award.docx." The second email attached the same letter as well as another Microsoft Word document entitled, "7.8.2020 GREEN CORRCTED [*sic*] FINAL ARBITRATION AWARD _ All Issues.docx." In the letter, Reverend Sizemore states that he corrected the arbitration award based on the Court's questions at the July 1, 2020 Motions Hearing.[53]

---

[48] Dkt. 19 (Minute Entry). Plaintiff was unable to physically attend the Motions Hearing but appeared by video conference and was represented in-person by Attorney Ross.

[49] *Id.*

[50] *Id.* Defendant filed several exhibits from the state court docket, including an Order entering Rule 11 sanctions against Attorney Ross. Dkts. 21-1–21-9 (Exhibits); 21-4 at 24 (Rule 11 Order).

[51] Dkt. 33 (Minute Entry).

[52] *See* Dkt. 25-1 (Email with Attachments);

[53] Dkt. 25-2 (Letter).

That afternoon at the Motions Hearing, Plaintiff testified as to his relationship with Defendant and the nature of the Contract.[54] He repeatedly and alternately referred to the Contract as a "marriage contract," "premarital agreement," "prenuptial contract," and "religious contract." Plaintiff was also asked about his involvement, if any, in drafting documents for Reverend Sizemore in his capacity as arbitrator. The Court directly asked Plaintiff whether he was the author of the Partial Award, Final Award, or letter and corrected award received by email that morning. Plaintiff answered, "No."

The Court then heard oral argument by both parties on the Motion for Confirmation.[55] Specifically, the Court posed questions concerning whether the Contract falls under the New York Convention—that is, whether any legal authority holds that a contract regarding divorce, child custody, and division of marital property may be considered a "commercial agreement" and may be subject to arbitration under the New York Convention. Despite indicating the authority existed, Plaintiff's counsel was unable to locate the citations to such authority in his files during the hearing. Therefore, the Court allowed Plaintiff to submit a supplemental filing for the limited purpose of identifying any legal authority responsive to the Court's question. The Court instructed Plaintiff to note the relevant legal authority in a summary, not to exceed one page, filed by 12:00 PM on July 9, 2020. Plaintiff was admonished that the filing was not an opportunity to reargue his position and that any filing that failed to conform with the instructions would be stricken.

---

[54] *Id.*

[55] *Id.*

10

*F. Subsequent Filings*

Plaintiff failed to file the requested supplemental authority before 12:00 PM on July 9, 2020. Instead, at 1:51 PM, on July 9, 2020, Plaintiff filed four separately titled memoranda spanning 10 pages that go beyond simply identifying relevant authority and instead attempt to expand the substantive answers given by Plaintiff at the hearing.[56] Because the memoranda failed to comply with the Court's specific instructions, the entire filing was stricken and the Court took the Motion for Expedited Consideration and Motion for Confirmation under advisement.[57] On July 10, 2020, Plaintiff filed a "Request for Clarification."[58] It appears from this filing that Plaintiff did not access the Court's Order at Docket 29 but rather read only the associated text entry, causing Plaintiff's confusion as to the reasoning for the Order. On July 13, 2020, Plaintiff filed a "Memoradum [*sic*] Related to the New York Convention."[59] This single-page memorandum appears to be Plaintiff's revised attempt to submit the requested supplemental authority. However, the memorandum was filed without first obtaining leave of the Court, four days after the Court's explicit deadline and after the Court had struck Plaintiff's prior memoranda and took the Motions under advisement.

---

[56] Dkt. 27 (Memoranda). The individual memoranda are titled, "Memorandum on Arbitration and Custody," "Memorandum Related to Commerce," "Memorandum Related to Pre-Nuptial Agreements," and "Memorandum Related to Religious Arbitration Tribunals." However, they were filed by Plaintiff as a single docket entry and docketed altogether as "Fourth MOTION case law brief by Richard Lee Green." *See* Dkt. 27.

[57] Dkt. 29 (Order).

[58] Dkt. 30 (Request). Plaintiff docketed this filing as "Notice Request for Clarification" rather than categorizing it as a motion.

[59] Dkt. 32 (Memorandum). Plaintiff docketed this filing as "Fourth Motion to Amend/Correct 29 Order,, [*sic*] Terminate Motions, Memorandum for the NY Convention (1pg) by Richard Lee Green." The underlying memorandum does not argue a motion to amend or correct or move for any other relief.

11

Also on July 9, 2020, Defendant filed a "Notice of Authorship," in which Defendant attached a screenshot of the document properties for the letter sent via email by Reverend Sizemore on July 8, 2020.[60] The screenshot shows that the document was authored by "RL Green" and last modified by "Tim Sizemore."[61] Defendant argues that the screenshot "shows and strongly suggests that [Plaintiff] committed perjury to this court" by denying that he drafted the letter.[62] In response, Plaintiff filed an Affidavit explaining that he "wrote out" and emailed his settlement ideas and proposed final arbitration award to Reverend Sizemore.[63] Plaintiff states that Partial and Final Awards do not contain all of his proposed provisions and also include "findings of facts" and "conclusions of law" that Plaintiff did not propose.[64] Plaintiff also filed an alleged email exchange between Attorney Ross and Reverend Sizemore concerning the authorship of documents.[65] According to the email, Reverend Sizemore allegedly used a document Plaintiff sent to him to draft the corrected arbitration award.[66] Finally, on July 13, 2020, Plaintiff filed a series of exhibits,

---

[60] Dkts. 25 (Notice), 25-3 at 26 (Screenshot).

[61] Dkt. 25-3 at 26.

[62] Dkt. 25 at 2. However, Defendant does not request any relief based on this troubling assertion.

[63] Dkt. 26 at 2 (Affidavit).

[64] *Id.* Plaintiff's affidavit focuses on the drafting process of the arbitration awards but does not address why he appears to be the author of the letter purportedly sent by Reverend Sizemore on July 8, 2020.

[65] Dkt. 28 (Email). The email was filed by itself, without a supporting affidavit or pleading to provide context or foundation. Such a filing does not comport with the Federal Rules of Evidence.

[66] *Id.* The email does not address the authorship of the July 8, 2020 letter.

including what appears to be another email purportedly sent by Reverend Sizemore and a final corrected arbitration award.[67]

### III. LEGAL STANDARD

The *Rooker-Feldman* doctrine bars federal courts "from hearing de facto appeals from state-court judgments" and "second-guessing state court decisions."[68] The doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[69] Under the *Rooker-Feldman* doctrine, a federal court action must be dismissed for lack of subject matter jurisdiction if the claims raised "are 'inextricably intertwined' with the state court's decisions such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."[70]

Similarly, the *Younger* abstention doctrine "is grounded in a 'longstanding public policy against federal court interference with state court proceedings.'"[71] The doctrine applies to three categories of cases: "(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's

---

[67] Dkt. 31 (Exhibits). As before, Plaintiff filed these exhibits in isolation and without a supporting affidavit or pleading to provide context or foundation.

[68] *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

[69] *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

[70] *Bianchi*, 334 F.3d at 898 (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)).

[71] *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)).

interest in enforcing the orders and judgments of its courts."[72] Abstention in civil cases is required where the state proceedings: "(1) are ongoing; (2) implicate 'important state interests'; and (3) provide an adequate opportunity to raise federal questions."[73] The Ninth Circuit has also identified "an implied fourth requirement that (4) the federal court action would enjoin the proceeding, or have the practical effect of doing so."[74]

## IV. ANALYSIS

The interplay and competing timelines of Plaintiff's filings in this case and in the ongoing state action render the *Rooker-Feldman* doctrine applicable here. Indeed, the issues raised by the Motion for Confirmation are inextricably intertwined with the state court's decisions. The state court is currently presiding over the parties' divorce and child custody disputes—the very issues addressed by the Final Award Plaintiff now seeks to confirm—and the state court explicitly ruled against arbitration.[75] It appears Plaintiff may have intended the present Motion for Confirmation to serve as a "de facto appeal" of the state court's decision to deny his motion to order arbitration. Plaintiff initiated the federal action and moved to confirm an arbitration award after and in spite of the state court's denial of arbitration.[76] But Plaintiff also moved the state court for

---

[72] *Id.*; *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

[73] *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing *Middlesex Cty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (extending *Younger* to civil proceedings "when important state interests are involved.")); *Herrera*, 918 F.3d at 1044.

[74] *Potrero Hills*, 657 F.3d at 882 (internal quotations omitted).

[75] *See* Dkt. 11-2 at 31.

[76] The state court denied Plaintiff's motion to order arbitration on May 19, 2020. Dkt. 11-2 at 31. Plaintiff initiated this case on June 5, 2020 and filed the Motion for Confirmation on June 17, 2020. Dkts. 1; 4.

14

reconsideration of that denial, which remained pending as Plaintiff began litigating this case.[77] Furthermore, Plaintiff did not even reference the ongoing state court action in his filings to this Court.[78] Plaintiff's Motion for Confirmation may well have been a disingenuous attempt to circumvent the state court's decisions, hoping this Court would confirm an arbitration that the state court had already rejected. Thus, Plaintiff's actions seek a "de facto appeal" that would subject this case to the *Rooker-Feldman* doctrine.[79] However, because reconsideration of the motion to order arbitration was before the state court, there may not have been a final state court judgment for this Court to review when Plaintiff first filed the Motion for Confirmation. Nonetheless, this Court need not decide whether a final state court judgment had been issued because there is a more appropriate resolution to this case than the *Rooker-Feldman* doctrine.

The Court must abstain in this case pursuant to the *Younger* doctrine. The underlying arbitration award and ongoing state court proceedings clearly implicate an important state interest: domestic relations. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."[80] Generally,

---

[77] *See* 11-1. Plaintiff filed the motion for reconsideration on May 26, 2020, and the state court denied the motion for reconsideration on June 22, 2020.

[78] *See* 11 at 1.

[79] In his Reply, Plaintiff argues that the *Rooker-Feldman* doctrine does not apply because he has never sought to confirm a foreign arbitration award in any state court. Dkt. 16 at 4. Plaintiff states he "has not received any judgment from any state court, plaintiff makes no appeal to this court in regards to any state action or judgments." *Id.* at 5. This argument and recitation of facts blatantly ignores the fact that the Alaska state court specifically stayed any attempts to arbitrate and denied the motion to order arbitration. Dkt. 11-1 at 3. Yet Plaintiff proceeded to "arbitrate" the issues despite the state court's Order.

[80] *In re Burrus*, 136 U.S. 586, 593-94 (1890).

15

federal courts are divested of power to issue divorce, alimony, and child custody decrees.[81] Moreover, the parties have been litigating the divorce and child custody issues before the state court for over a year and a half.[82] Plaintiff has had an adequate opportunity to litigate his claims, including any federal claims.[83] Then, Plaintiff unilaterally proceeded to arbitrate these same issues in direct contravention of the state court's Order denying arbitration. For this Court to confirm the arbitration awards, it would not only validate Plaintiff's subversive conduct but also enjoin and unravel the state court's ongoing proceedings. This is precisely the type of case suited to *Younger* abstention.[84] Therefore, this case must be dismissed.

Notwithstanding abstention, and for the sake of a more complete analysis, the Court finds that the Partial Award and Final Award are not subject to the New York Convention and may not be confirmed pursuant to 9 U.S.C. § 207.[85] The New York Convention enforces "[a]n arbitration

---

[81] *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968) ("[I]t is well recognized that the federal courts must decline jurisdiction of cases concerning domestic relations when the primary issue concerns the status of parent and child or husband and wife."); *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) ("Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters.") (collecting cases).

[82] *See* Dkt. 11-1 at 1 ("The Complaint for Divorce was filed on January 17, 2019.").

[83] *Id.* at 1–2, n.1&2. By the time Plaintiff notified the State Court of his intent to pursue arbitration, he had filed 17 motions and the State Court had held seven days of trial.

[84] *See H.C. ex rel Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (dismissing a child custody case under *Younger*). *See also Safoune v. Fleck*, 226 Fed.Appx. 753 (9th Cir. 2007) (dismissing claims for injunctive or declaratory relief under *Younger* due to pending juvenile dependency case pending in state court).

[85] The Court makes no findings as to the validity of the underlying Contract or arbitration proceedings. The Court makes no findings as to whether the awards resulting from arbitration proceedings conducted in the United States, with all participants residing in the United States, are considered a "foreign arbitral awards" under the New York Convention. The Court also declines to analyze whether grounds for refusal or deferral of recognitions or enforcement of the arbitration

agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as *commercial*."[86] Court finds no legal authority or evidence in the record to support that the marital contract in this case evidences a "transaction involving commerce."[87] The parties, citizens of different countries, entered into a premarital agreement which attempted to delineate ownership of assets and property in light of community property laws. Routine division of marital property is generally not considered a commercial transaction. Furthermore, as described above, child custody concerns—not international commerce—predominate the Contract and the resultant Final Award. Therefore, the Court is not persuaded that the Contract is of a commercial nature such that the New York Convention or 9 U.S.C. § 207 applies.

In any event, in light of the ongoing state court divorce and child custody proceedings, this Court shall abstain from adjudicating the Motion for Confirmation on the merits because the underlying arbitration implicates important state interests.

---

award apply. *See* 9 U.S.C. § 207. Here, the Court simply addresses the threshold issue: whether the purported Contract is considered a commercial agreement.

[86] 9 U.S.C. § 202 (emphasis added).

[87] *See* 9 U.S.C. § 2.

## V. CONCLUSION

The Motion for Confirmation at Docket 4 is **DENIED**. The Motion for Expedited Consideration at Docket 3 and memorandum docketed as a motion at Docket 32 are **DENIED as moot**. The Clerk of the Court is directed to **DISMISS** this case. In order to avoid any additional confusion, the parties are directed to provide a copy of this Court's docket and this Order to the state court presiding over their divorce and child custody action.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 29th day of July, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE